# United States Court of Appeals

### For the Eighth Circuit

_____

No. 12-1004

_____

United States of America

*Plaintiff - Appellee*

v.

Ralph Egmund Harald Frisch

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 15, 2012
Filed: January 28, 2013

_____

Before LOKEN, SMITH, and BENTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Ralph Egmund Harald Frisch pleaded guilty to one count of concealment from the Social Security Administration (SSA), in violation of 42 U.S.C. § 408(a)(4). The

district court[1] sentenced Frisch below the advisory Guidelines range. Frisch appeals his sentence as procedurally and substantively unreasonable. We affirm.

## I. *Background*

In 2002, Frisch filed a claim seeking disability benefits with the SSA. The SSA ultimately found Frisch to be disabled and began paying disability benefits to him. Frisch also made a workers' compensation claim against Jennie-O Turkey, his former employer. In 2004, Jennie-O Turkey hired a private company to investigate and conduct surveillance of Frisch. Over the course of several days, investigators observed and videotaped Frisch performing roofing work, climbing up and down a ladder, and working with an electric saw. In 2008, the SSA Office of the Inspector General learned of the video surveillance and began investigating Frisch. An SSA investigator interviewed Frisch, and he admitted to working at jobs requiring manual labor, including snow shoveling, painting, and roofing. Thereafter, the SSA terminated Frisch's disability benefits. Frisch was 63 years old. In total, Frisch received $86,160 in Social Security disability benefits to which he was not entitled. In 2011, the government indicted Frisch for his conduct. Frisch pleaded guilty to one count of concealment from the SSA, in violation of 42 U.S.C. § 408(a)(4).

Because the statutory maximum penalty for a violation of § 408(a)(4) is five years' imprisonment, the presentence investigation report (PSR) calculated Frisch's base offense level as 6. *See* U.S.S.G. § 2B1.1(a)(2). The PSR determined that Frisch was "responsible for a loss amount of $86,160." Applying Application Note 3(A) of § 2B1.1, the PSR noted that "a loss is the greater amount of the actual or intended loss." The PSR concluded that if Frisch had not been caught, he "would have continued to receive benefits [to which] he was not legally entitled until the retirement age of 66." Thus, Frisch would have received $38,610 in addition to the

---

[1]The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

$86,160 already received, for a total intended amount of $124,770. Because this amount exceeded $120,000, it triggered a ten-level increase in the offense level above the base offense level of 6. *See* U.S.S.G. § 2B1.1(b)(1)(F). The PSR then subtracted three levels for Frisch's acceptance of responsibility, *see* U.S.S.G. § 3E1.1, resulting in a total offense level of 13. A total offense level of 13, combined with a criminal history category of VI, produced an advisory Guidelines range of 33 to 41 months' imprisonment.

As to the amount of loss, the government noted the absence of any indication that Frisch would have voluntarily disclaimed the disability benefits if his fraud had gone undetected and asked the court to find that the loss amount is the intended loss. The government requested a mid-range sentence of 36 months' imprisonment. Frisch objected to the intended loss calculation and requested that the court sentence him to 27 months' imprisonment to run concurrent to his 78-month state sentence for selling methamphetamine.

At sentencing, the district court found a factual basis to support using the intended-loss calculation. Consistent with the PSR, it calculated a Guidelines range of 33 to 41 months' imprisonment. The district court also noted that if it had found the loss amount was limited to the actual loss, then the Guidelines range would be 30 to 37 months' imprisonment. It explained that "[i]rrespective of where I begin, . . . I believe I am going to end up with the same sentence before we are done this afternoon."

In sentencing Frisch, the district court noted that Frisch was of a relatively advanced age, had health problems, and had previously served prison time. The court also considered the need to promote respect for the law, the need to deter Frisch from committing future crimes, and the need to deter others from committing similar crimes. And, the court considered that Frisch "ha[s] been in custody doing two-thirds of the 78-month sentence." The court concluded that "anything less than a 25-month

consecutive sentence w[ould] not promote respect for the law and would not be just punishment and would not be consistent with similarly-situated individuals." In sentencing Frisch to 25 months' imprisonment to run consecutive to his state sentence, the court stated that it had "taken into account . . . [Frisch's] age, [his] health, and the fact that [he] had been in prison for a time."

Frisch appeals his sentence, asserting procedural error and substantive unreasonableness.

## II. *Discussion*

In reviewing Frisch's sentence, first we "ensure that the district court committed no significant procedural error." *Gall v. United States*, 552 U.S. 38, 51 (2007). If there is no procedural error, "then [we] consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* "In determining whether a procedural error has been committed, we review the district court's factual findings for clear error, and its interpretation and application of the [G]uidelines, de novo." *United States v. Robinson*, 639 F.3d 489, 495 (8th Cir. 2011) (quotations and citations omitted).

## A. *Procedure*

Frisch claims that he relinquished the intent to defraud the SSA in 2008 when an SSA investigator interviewed him. He claims that he demonstrated his relinquishment of intent to defraud by admitting to both lying and receiving benefits to which he was not entitled. Therefore, Frisch argues, the district court procedurally erred in accepting the government's intended loss calculation, which included sums accruing after he relinquished his intent.

"A district court's determination of loss need not be precise, although it must reflect a reasonable estimate of the loss." *United States v. Jenkins*, 578 F.3d 745, 749 (8th Cir. 2009) (quotation and citation omitted). "The sentencing judge is in a unique

-4-

position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to appropriate deference." U.S.S.G. § 2B1.1 n.3(C) (citing18 U.S.C. § 3742(e) and (f)). The Guidelines define "intended loss" as "the pecuniary harm that was intended to result from the offense." U.S.S.G. § 2B1.1 n.3(A)(ii).

Here, the district court accepted the government's reasoning that Frisch would have continued receiving benefits to which he was not legally entitled until the retirement age of 66 if he had not been caught. When calculating intended loss, the appropriate inquiry is what the loss would have been if the defendant had not been caught. *See United States v. Henderson*, 416 F.3d 686, 695 (8th Cir. 2005). ("Because the jury found that [the defendant] intended to continue receiving SSDI, when it actually ended is irrelevant to calculating the intended loss."); *United States v. Rettenberger*, 344 F.3d 702, 708 (7th Cir. 2003) ("[The defendant] set out to take the insurers for all they were worth, and that meant benefits through age 65. What would have induced him to disclaim benefits earlier?"). Frisch's intent to stop defrauding the SSA after its investigators confronted him about it does not impact the intended loss calculation because the intent to cease did not arise until the authorities interdicted the offense. Nothing beyond Frisch's statements indicate that he would have ceased accepting payments before his meeting with SSA officials, and the district court could reasonably conclude that he intended to continue doing so. Thus, the district court did not procedurally err in accepting the government's intended loss calculation.

## B. *Substantive Reasonableness*

Frisch argues that his sentence is substantively unreasonable because it is greater than necessary to accomplish the goals of sentencing and it fails to give proper weight to his admission of wrongdoing and his attempt at making restitution. Frisch claims that he had repaid almost $8,000 at the time of his sentencing hearing. Furthermore, he argues that he does not need to be deterred from committing future crimes because his health problems will prevent him from being a danger to the

public, and, in any case, he will be legitimately collecting social security retirement benefits by the time he is released from prison.

"[W]here a district court has sentenced a defendant below the advisory [G]uidelines range, 'it is nearly inconceivable that the court abused its discretion in not varying downward still further.'" *United States v. Moore*, 581 F.3d 681, 684 (8th Cir. 2009) (quoting *United States v. Lazarski,* 560 F.3d 731, 733 (8th Cir. 2009)). Here, the record clearly shows that the district court considered the mitigating factors Frisch cited. The court explicitly noted Frisch's age, his health problems, and his restitution payments. The court sentenced Frisch to 25 months' imprisonment to run consecutive to his state sentence. This sentence was well below the advisory Guidelines range of 33 to 41 months. This was not an abuse of discretion.

### III. *Conclusion*

Because we conclude that the district court did not procedurally err or abuse its discretion in sentencing Frisch to 25 months' imprisonment, we affirm.

_____