# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1530

_____

United States of America

*Plaintiff - Appellee*

v.

Ramon Garcia

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: November 14, 2014
Filed: December 17, 2014
[Published]

_____

Before RILEY, Chief Judge, BEAM and GRUENDER, Circuit Judges.

_____

PER CURIAM.

On October 23, 2013, the government filed a one-count indictment against Ramon Garcia and six co-defendants charging them with conspiracy to distribute 500 grams or more of a mixture containing methamphetamine, in violation of 21 U.S.C. §§ 841(a), 846. Garcia pled guilty without a plea agreement. After a two-day

sentencing hearing, the district court[1] concluded that Garcia was responsible for over 15 kilograms of a mixture containing methamphetamine, which resulted in a base offense level of 38 under United States Sentencing Guidelines Manual (U.S.S.G.) § 2D1.1(c)(1).[2] Garcia also received a two-level enhancement under § 2D1.1(b)(12) for maintaining a premise for the purpose of distributing a controlled substance, and a three-level enhancement under § 3B1.1(b) for being a manager or supervisor in criminal activity involving five or more participants. After applying a three-level reduction for acceptance of responsibility, the district court calculated Garcia's total offense level at 40 and imposed a within-Guidelines range sentence of 292 months. On appeal, Garcia argues that the district court erred by incorrectly calculating his base offense level, relying on inadmissible hearsay in determining that Garcia had maintained a stash house, concluding that he was a manager or supervisor, and refusing to impose a sentence below the Guidelines range. We affirm.

Garcia first argues that the district court's drug quantity calculation was based solely on "extrapolation and conjecture" and was therefore unsupported by the evidence. "We review the district court's factual finding of drug quantity for clear error and will reverse a determination of drug quantity only if the entire record definitely and firmly convinces us that a mistake has been made." United States v. Minnis, 489 F.3d 325, 329 (8th Cir. 2007) (internal quotation omitted). "Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the

---

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

[2]Effective November 1, 2014, a defendant responsible for at least 15 kilograms but less than 45 kilograms of a mixture containing methamphetamine will receive a base offense level of 36. U.S.S.G. § 2D1.1(c)(2). Garcia, however, was sentenced on February 19, 2014, and the district court correctly used the Guidelines Manual in effect on that date in calculating Garcia's base offense level. 18 U.S.C. § 3553(a)(4)(A)(ii); U.S.S.G. § 1B1.11(a).

court shall approximate the quantity of the controlled substance." U.S.S.G. § 2D1.1 cmt. n.5. "Moreover, the court can determine drug quantity using imprecise evidence, so long as the record reflects a basis for the court's decision." United States v. Zimmer, 299 F.3d 710, 720 (8th Cir. 2002) (internal quotation omitted). After carefully reviewing the sentencing record, we hold that the district court did not clearly err in holding Garcia responsible for at least 15 kilograms of methamphetamine. The record instead indicates that the district court's quantity determination was well reasoned and supported by witness testimony. Garcia's argument that the district court incorrectly calculated his base offense level is therefore without merit.

Garcia next argues that the district court erred in applying a two-level enhancement under U.S.S.G. § 2D1.1(b)(12) after concluding that he maintained a premises in Lincoln, Nebraska, for the purpose of transporting and distributing methamphetamine. The stash house enhancement "applies to a defendant who knowingly maintains a premises (i.e., a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution." U.S.S.G. § 2D1.1(b)(12) cmt. n.17. "We review factual findings that [Garcia] maintained the premises for the purpose of distributing methamphetamine for clear error." United States v. Miller, 698 F.3d 699, 705 (8th Cir. 2012). "Among the factors the court should consider in determining whether the defendant 'maintained' the premises are: (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises." U.S.S.G. § 2D1.1(b)(12) cmt. n.17.

The record establishes that the district court did not clearly err when it concluded that Garcia maintained the premises and used it primarily as a base of operations to transport, store, and distribute methamphetamine. Miller, 698 F.3d at

706-07. Multiple officers testified that from May 2013 to October 2013, Garcia regularly used a detached garage on the premises to store vehicles that were used in the drug conspiracy. There was also credible evidence suggesting that these vehicles sometimes contained large quantities of drugs when they were stored in the garage. In addition, although the rent and utilities for the premises were in another individual's name, the government presented evidence that this individual was rarely at the premises and that Garcia had free access to the premises, mowed the lawn, and took out the garbage. The record therefore contains considerable evidence that Garcia maintained the premises principally for the purpose of storing and distributing methamphetamine.[3] Id.

Garcia claims that the district court erred by admitting and relying upon hearsay testimony to support its determination that the premises was used as a stash house. Specifically, Garcia objects to the admission of a hearsay statement made by his sister-in-law, who allegedly stated that Garcia permitted her to move into the premises in October 2013 but restricted her access to certain parts of the premises. The district court also admitted hearsay statements made by the owners of the premises indicating that rent was paid via electronic deposit and that the lessor stopped making rental payments shortly after Garcia was arrested.

"[T]he sentencing process does not carry the same evidentiary protections guaranteed during a criminal trial." United States v. Agboola, 417 F.3d 860, 865 (8th Cir. 2005) (quotation omitted). "A district court has wide discretion at sentencing as

---

[3]Garcia places substantial emphasis on the fact that the government did not concretely prove that he owned or rented the premises. Our precedent, however, establishes that owning or renting the premises used as a stash house is not a prerequisite to the application of the enhancement under U.S.S.G. § 2D1.1(b)(12). United States v. Renteria-Saldana, 755 F.3d 856, 859-60 (8th Cir.), cert. denied, 135 S. Ct. 423 (2014).

to the kind of information considered or its source," and it may consider uncorroborated hearsay evidence so long as the evidence has sufficient indicia of reliability to support its accuracy and the defendant is given a chance to rebut or explain it. United States v. Atkins, 250 F.3d 1203, 1212-13 (8th Cir. 2001); see U.S.S.G § 6A1.3(a). The record indicates that the hearsay statements the district court admitted were credible and were consistent with other witness testimony regarding Garcia's control over the premises. The district court therefore properly exercised its "sound discretion" in admitting and relying upon these statements. United States v. Cassidy, 6 F.3d 554, 557 (8th Cir. 1993).

Garcia next argues that the district court erred when it concluded that he was a manager or supervisor in a conspiracy involving five or more participants. We review the district court's factual findings regarding aggravating role enhancements for clear error, applying a preponderance of the evidence standard. United States v. Gamboa, 701 F.3d 265, 266-67 (8th Cir. 2012). "[W]e have defined the terms 'manager' and 'supervisor' quite liberally, holding that a defendant can be subject to this enhancement for having managed or supervised only one other participant in the criminal conspiracy." United States v. Lopez, 431 F.3d 313, 317-18 (8th Cir. 2005). Garcia contends that he did not supervise anyone in the conspiracy but merely followed the orders of his superiors in Phoenix and Lincoln. There was substantial testimony at the sentencing hearing, however, indicating that Garcia instructed persons delivering drugs from Phoenix where to drop off the drugs and that he paid them for their services. Garcia also helped to provide at least two vehicles that were used to transport drugs from Phoenix to Lincoln, and the record indicates that he instructed a co-conspirator to register and insure the vehicles in the co-conspirator's name. The district court therefore did not clearly err when it concluded by a preponderance of the evidence that Garcia supervised co-conspirators in a conspiracy

involving five or more participants.[4] Id.; see United States v. Lawrence, 918 F.2d 68, 71-72 (8th Cir. 1990) (holding that defendant who procured, stored, and sold drugs and paid his suppliers was a manager or supervisor in drug conspiracy).

Finally, Garcia argues that his within-Guidelines range sentence is substantively unreasonable because the district court failed to adequately weigh the factors set forth in 18 U.S.C. § 3553(a). "We apply an abuse-of-discretion standard to review the substantive reasonableness of a sentence." United States v. Sandoval-Sianuqui, 632 F.3d 438, 444 (8th Cir. 2011). "A sentence within the Guidelines range is accorded a presumption of substantive reasonableness on appeal." United States v. Robinson, 516 F.3d 716, 717 (8th Cir. 2008). After reviewing the sentencing record, it is clear that the district court properly and carefully considered the § 3553(a) factors. We therefore reject Garcia's contention that his sentence was substantively unreasonable. United States v. Hernandez, 518 F.3d 613, 617 (8th Cir. 2008).

For the reasons stated herein, the judgment of the district court is affirmed.

_____

_____

[4]Garcia does not dispute the district court's conclusion that the conspiracy involved at least five participants.