# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-2562

_____

United States of America

*Plaintiff - Appellee*

v.

Todd Matthew Haulk, also known as Todd Haulk

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: June 14, 2021
Filed: August 24, 2021
[Unpublished]

_____

Before LOKEN, WOLLMAN, and ERICKSON, Circuit Judges.

_____

PER CURIAM.

Todd Matthew Haulk pleaded guilty to one count of conspiracy to distribute methamphetamine and methamphetamine mixture in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. At sentencing and over Haulk's objection, the

district court[1] applied a two-level enhancement to Haulk's base offense level under the U.S. Sentencing Guidelines (U.S.S.G. or Guidelines) after finding that he had "maintained a premises for the purpose of manufacturing or distributing a controlled substance," see U.S.S.G. § 2D1.1(b)(12). With a total offense level of 42 and a criminal history category of I, Haulk's sentencing range was 360 months' to life imprisonment. The district court varied downward and sentenced Haulk to 240 months' imprisonment.

Haulk argues that the district court clearly erred in finding that he maintained his residence for the purpose of distributing a controlled substance. See United States v. Miller, 698 F.3d 699, 705 (8th Cir. 2012) (standard of review). For the enhancement to apply, drug distribution "need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." U.S.S.G. § 2D1.1 cmt. n.17. As set forth in the presentence report (PSR), Haulk purchased his Davenport, Iowa, house in 2012 and was sharing it with his girlfriend at the time of his offense. He claims that the primary use of the premises was residential because he did not frequently sell methamphetamine there. We have held, however, that the enhancement applies "when a defendant uses the premises for the purpose of substantial drug-trafficking activities, even if the premises was also [his] family home at the times in question." Miller, 698 F.3d at 707.[2]

---

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

[2]Haulk argues that Miller was wrongly decided, but "[i]t is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel." Owsley v. Luebbers, 281 F.3d 687, 690 (8th Cir. 2002) (per curiam) (citation omitted).

We conclude that the district court did not clearly err in applying the enhancement. During the initial search of Haulk's house, officers seized four pounds of ice methamphetamine and three firearms. Haulk later admitted to investigators that he had hidden three pounds of ice methamphetamine in his basement's drop ceiling and one pound beneath his basement couch. Haulk also admitted that he had attempted to weigh the methamphetamine in the house. See United States v. Garcia, 774 F.3d 472, 475 (8th Cir. 2014) (evidence that defendant used premises to store vehicles containing methamphetamine supported district court's application of the so-called "stash house enhancement"). Haulk distributed methamphetamine at his house on at least one occasion, during the process of which he stated that he was awaiting a mail shipment of more methamphetamine and wanted to obtain additional firearms. Haulk thereafter received at his house two mailed packages that an informant told investigators contained a total of five pounds of methamphetamine. During the subsequent search of Haulk's house, officers discovered an additional ten ounces of ice methamphetamine and another firearm.[3] This unobjected-to information set forth in the PSR supports the district court's finding that Haulk had maintained his Davenport house for the purpose of distributing methamphetamine.

Haulk next argues that his 240-month sentence is substantively unreasonable in light of his lack of a significant adult-age criminal history, his age, his support system, and the degree to which his aberrant criminal behavior was caused by his drug addiction. Reviewing for abuse of discretion, we disagree. See Gall v. United States, 552 U.S. 38, 51 (2007) (standard of review). The district court properly considered the 18 U.S.C. § 3553(a) factors in imposing Haulk's sentence. It weighed the "staggering" amount of methamphetamine involved—more than six kilograms—as well as Haulk's possession of firearms in connection with the drug distribution, the need to avoid unwarranted sentencing disparities, the need for

_____

[3]Although Haulk disputes whether this methamphetamine is properly attributed to him, he does not dispute that it was stored in his house.

-3-

adequate deterrence, and the need to protect the public. Against these aggravating factors, the district court weighed Haulk's self-described mitigating circumstances. See United States v. King, 898 F.3d 797, 810 (8th Cir. 2018) ("The district court's decision not to weigh mitigating factors as heavily as [the defendant] would have preferred does not justify reversal." (internal quotation marks and citation omitted)). After concluding that the Guidelines failed to address Haulk's circumstances adequately and that the sentencing range was thus unreasonable as applied to him, the district court imposed a sentence that was 120 months below the advisory Guidelines sentencing range. As we have frequently observed, it is "nearly inconceivable" that the district court abused its discretion in not varying downward still further. See, e.g., United States v. Bevins, 848 F.3d 835, 841 (8th Cir. 2017) (quoting United States v. Lazarski, 560 F.3d 731, 733 (8th Cir. 2009)).

The judgment is affirmed.

_____